UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆ APR 0 4 2011 ★

BROOKLYN OFFICE

--------------------------------------------------------------- x

ELAINE LUPO,

                    Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

--------------------------------------------------------------- x

**MEMORANDUM & ORDER**

07-CV-4660 (ENV)

**VITALIANO, D.J.**

Pro se plaintiff Elaine Lupo seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under the Social Security Act. The Commissioner has filed a motion for judgment on the pleadings. For the reasons stated below, the motion is denied, and the case is remanded for further administrative proceedings.

I.     **BACKGROUND**

Lupo filed her application for disability benefits on May 30, 2003, alleging a disability onset date of August 8, 2002, when she claims she was injured when a heavy drawer fell out of a file cabinet, injuring her wrist and back, as she discharged her work responsibilities as a secretary for the New York City Board of Education. Lupo's application for disability benefits was denied by the Social Security Administration ("SSA"). After appealing the initial denial, Lupo had a hearing before Administrative Law Judge Manuel Cofresi (the "ALJ"), on August 2, 2005. (Tr. 190-202.) The ALJ issued his decision denying disability status and benefits on September 28, 2006. (Tr. 16-21.) This appeal followed.

1

The administrative record in this case is exceptionally sparse, but several essential facts are clear. Lupo worked at the Board of Education on a full-time basis for 22 years. Her work included telephone reception, typing, copying, distributing mail, and filing. The mail included architectural drawings and building specs, which could weigh 25 to 30 pounds each, and which Lupo distributed every day. After the accident, plaintiff was diagnosed with a sprained left wrist, lumbar sprain, and radiculopathy (an abnormality at the nerve root, along the spine, with can result in pain in the extremities). Her back injuries were primary treated by Dr. Leonard Harrison, an orthopedist in Manhattan, who prescribed pain medication and physical therapy. A magnetic resonance imaging ("MRI") scan performed on December 19, 2002 showed two herniated discs in Lupo's lumbar spine, one of which was impinging upon the thecal sac (a membrane containing cerebrospinal fluid).

Lupo received one-time independent medical evaluations ("IMEs") from a number of other health care providers, at the behest of the Board of Education regarding her claim for worker's compensation. None of these providers treated Lupo on a regular basis. The IMEs were performed by Dr. Andrew Brown of Downtown Physical Medicine & Rehabilitation and Dr. Armand Prisco from Professional Evaluation Group, P.C.

In an evaluation dated October 27, 2004, Dr. Brown found that Lupo had "[t]raumatic lumbosacral pain syndrome" with herniated nucleus pulposus (herniations), radiculitis (radiated pain caused by radiculopathy), and facet arthropathy (pain caused by degeneration and arthritis of the facet joints of the back). He recommended injections of pain medication and steroids, with possible need for surgical intervention. Moreover, he found that her left wrist was still strained, with possible "ulnar nerve compression neuropathy" (pain caused by compression on the ulnar nerve in the arm) and "triangular fibrocartilage complex tear." He recommended a

MRI scan to rule out the fibrocartilage tear, a nerve conduction study to rule out the neuropathy, and a consultation with a hand surgeon. As for Dr. Prisco, in three IMEs conducted in 2002 and 2003, his examination findings were substantially similar, but the conclusion as to whether Lupo was disabled in the context of worker's compensation changed each time: first from a moderate partial disability, then to a mild partial disability, then to no disability.

## II.    STANDARD OF REVIEW

In reviewing a denial of disability benefits under 42 U.S.C. §§ 405(g), the Commissioner's determination will be reversed only if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles," or if it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. See, e.g., Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits her work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant has the residual functional capacity to

perform her past relevant work.[1]  20 C.F.R. § 404.1520(a)(4)(iv).  This step requires that the ALJ

first make an assessment of the claimant's residual functional capacity generally.  20 C.F.R. §

404.1520(e); id. § 404.1545.  Fifth, if the claimant cannot perform her past work, the ALJ

determines whether there is other work that the claimant could perform.  20 C.F.R. §

404.1520(a)(4)(v).  In making his determination by this process, the Commissioner must

consider four factors: "'(1) the objective medical facts; (2) diagnoses or medical opinions based

on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others;

and (4) the claimant's educational background, age, and work experience.'"  Brown v. Apfel,

174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The claimant bears the burden of proof as to the first four steps.  See, e.g., Balsamo v.

Chater, 142 F.3d 75, 80 (2d Cir. 1998).  If the claimant proves that her impairment prevents him

from performing past relevant work, the burden shifts to the Commissioner at the final step.  Id.

In the fifth step analysis, the Commissioner must show that the claimant retains the residual

functional capacity to perform a certain category of work, such as light work or sedentary work,

and that such work is available in the national economy.  Curry v. Apfel, 209 F.3d 117, 122-23

(2d Cir. 2000).  SSA regulations have subsequently limited the step five burden on the

Commissioner, removing the requirement that the Commissioner show residual functional

capacity, see 20 C.F.R. § 404.1560(c)(2), and these regulations "abrogated Curry v. Apfel at

least in cases where the onset of disability was after the regulations were promulgated on August

26, 2003."  Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  Lupo's onset of disability was

---

[1]    Under the regulations, "past relevant work" is defined as "work that you have done within
the past 15 years, that was substantial gainful activity, and that lasted long enough for you to
learn to do it."  20 C.F.R. § 404.1560(b)(1).

in 2002, however, and thus his case must be decided under the Curry standard. See, e.g., Brown

v. Comm'r of Soc. Sec., No. 06-CV-3174, 2011 WL 1004696, at *3 (E.D.N.Y. Mar. 18, 2011);

Ramos v. Astrue, No. 09-CV-3030, 2010 WL 3325205, at *6 (E.D.N.Y. Aug. 19, 2010).[2]

## III. DISCUSSION

After reaching the fourth step of the SSA analysis,[3] the ALJ concluded that Lupo was not

disabled and retained the residual functional capacity to perform sedentary work — the category

in which he placed her past relevant work as a secretary for the Board of Education. "Sedentary

work is the least rigorous of the five categories of work recognized by SSA regulations. These

include 'very heavy', 'heavy,' 'medium,' 'light,' and 'sedentary.' " Schaal v. Apfel, 134 F.3d

496, 501 n.6 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). Sedentary work "generally involves up

to two hours of standing or walking and six hours of sitting in an eight-hour work day." Perez v.

Chater, 77 F.3d 41, 46 (2d Cir. 1996). It also involves "lifting no more than 10 pounds at a time

and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R.

§ 404.1567(a).

Within SSA's framework of five-step analysis and job categorization, the Court finds that

the ALJ's determination here was not supported by substantial evidence nor based on correct

legal principles as clearly articulated by SSA regulations and related case law. As for the lack of

substantial evidence, two errors are immediately evident.

---

[2]   The Second Circuit "decline[d] to reach the issue" of whether the 2003 regulations apply
retroactively to cases, like Lupo's, where the onset of disability predated the promulgation of
20 C.F.R. § 404.1560(c)(2). See Poupore, 566 F.3d at 306. Given that Poupore limited itself
to cases with onsets of disability after August 26, 2003, Curry is still good law for cases with
onsets before that date. Moreover, it should be noted that the outcome here would be the
same regardless of the answer to the retroactivity question raised in Poupore.

[3]   The Court does not reach the issue of whether the ALJ properly decided that Lupo does not
have a listed impairment, pursuant to the third step of the SSA analysis.

First, the ALJ relied upon a Thomas J. Sheehy, M.D. as "the claimant's treating source" and accords his purported opinions controlling weight. (Tr. 19.) This was plain error. As Lupo clearly testified during the hearing (Tr. 198.) — and as is obvious from Lupo's medical records and conceded by the Commissioner (Br. 3) — her treating physician for her orthopedic conditions was Dr. Harrison. Dr. Sheehy never examined Lupo, let alone treated her. On the contrary, Dr. Sheehy's only connection to this case is that he is listed as "Medical Director" on the letterhead of Professional Evaluation Group, P.C., where Dr. Prisco evidently practices. Moreover, the ALJ's determination never mentions Dr. Harrison at all, an omission that is especially problematic given the importance of the SSA's treating physician rule. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. § 404.1527(d)(2). This error alone is fatal, eviscerating any reasonable confidence in the ALJ's determination, and requires remand.

Second, the ALJ determined that Lupo had the residual functional capacity for sedentary work and that her former employment at the Board of Education was classified as sedentary work. (Tr. 19.) According to SSA regulations, however, sedentary work includes the lifting of "no more than 10 pounds at a time," 20 C.F.R. § 404.1567(a). Lupo, dispositively, testified that her job had regularly required her to lift building specs of 25 to 30 pounds each (Tr. 195), a weight range concordant with "medium work" under SSA regulations. See 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with *frequent lifting or carrying of objects weighing up to 25 pounds.*") (emphasis added). Accordingly, on this ground as well, the ALJ's determination was not based on substantial evidence nor did it apply the correct legal standard. Given these undisputed facts, it is clear that Lupo did not have the residual functional capacity to perform her past relevant work, and thus the ALJ should not

6

have ended the analysis at step four but should have continued to step five, at which the Commissioner would have borne the burden of showing that Lupo retained some residual functional capacity and that such work was available in the national economy.[4]

The ALJ's determination suffers from an additional legal error. Even putting aside the misidentification of Dr. Sheehy as Lupo's treating physician, the ALJ gave undue consideration to the reports of IMEs that Lupo underwent at the behest of the Board of Education, which was contesting Lupo's worker's compensation claim. See Cullinane v. Sec'y of Dept. of Health & Human Servs. of U.S., 728 F.2d 137, 139 (2d Cir. 1984) ("It can hardly be questioned that a report submitted by a witness whose self-interest may well have dictated its contents cannot and should not be permitted to constitute substantial evidence."); Odorizzi v. Sullivan, 841 F. Supp. 72, 78 (E.D.N.Y. 1993) (discounting "reports at the behest of a party with a vested interest in minimizing plaintiff's impairments"). The ALJ's heavy reliance on the IMEs of Dr. Prisco (misnamed as Dr. Sheehy) and Dr. Brown[5] (named in the opinion only as "Downtown Physical Medicine"[6]) was improper.

Finally, the ALJ failed to carry out his affirmative duty to supplement the record. See Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Lupo's medical records are sparse. The records from Dr. Harrison, in particular, require supplementation. Indeed, the necessity of additional evidence was recognized by the ALJ himself, who concluded the August

---

[4]  The Commissioner must bear this burden given that Lupo's alleged onset of disability occurred before the promulgation of the 2003 SSA regulations. See supra.

[5]  Moreover, even in his consideration of Dr. Brown's opinions, the ALJ failed to take into account Dr. Brown's October 2004 opinion, in which he found that Lupo's conditions persisted.

[6]  The ALJ stumbled yet again in stating that Lupo had "been treated at Downtown Physical Medicine since 2002." Lupo was never treated there; she was only evaluated there.

2, 2005 hearing by stating he would subpoena additional records and then calendar Lupo's case

for a supplemental hearing unless he was able to render a decision fully favorable to her. (Tr.

202.) While the ALJ may have sought additional records from Lupo's providers, SSA

regulations require him to make "every reasonable effort to obtain evidence from [the

claimant's] own medical sources." 20 C.F.R. § 404.1512(f). Such efforts include not only

seeking *existing* records from a claimant's medical sources but also requesting "a new report, or

a more detailed report from [such] medical source, including [the claimant's] treating source, or

by telephoning [the claimant's] medical source." 20 C.F.R. § 404.1512(e)(1). There is no

indication in the record that such efforts were ever undertaken as to Dr. Harrison.[7] Moreover,

while Lupo has indicated that she underwent physical therapy to treat her injuries, it does not

appear that any records, reports, or telephonic testimony has ever been sought from any of her

physical therapists. These failures to supplement the record constitute additional legal errors

meriting remand.

## IV.    CONCLUSION

Given that the ALJ's determination was not based on substantial evidence, and that it

relied on incorrect legal principles, the proper course is to remand this case. On remand, the ALJ

shall correct the errors identified above and shall develop and update the record to include

evidence of Lupo's condition and medical history since 2006, including evidence of her alleged

disabilities related to her wrist as well as her spine.

---

[7]    Instead, it appears that the Commissioner sent Lupo for a consultative examination pursuant to 20 C.F.R. § 404.1512(f), despite the fact that that regulation requires "every reasonable effort to obtain evidence from [the claimant's] medical sources" *before* a consultative examination is requested. This examination was performed by a Dr. Kyung Seo on July 25, 2003. Even though the ALJ's determination did not rely on Dr. Seo's examination, sending Lupo for a consultative examination — before requesting new, more detailed reports from Dr. Harrison, as well as telephoning Dr. Harrison — constituted another misapplication of the governing regulations.

8

For the these reasons and all the foregoing, the Commissioner's motion for judgment on the pleadings is denied, and this case is remanded for further administrative proceedings consistent with this Memorandum and Order.

The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      March 30, 2011

ERIC N. VITALIANO
United States District Judge